IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                         No. CR 24-1402

OBETH TALAMANTE SANCHEZ and
JOSE TALAMANTE SANCHEZ,

      Defendants,

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the United States' Response to Defendant Obeth Talamante Sanchez's Sentencing Memorandum, filed January 5, 2026 (Doc. 79)("Response"); and (ii) the United States' Objection to Jose Talamante Sanchez' Presentence Investigative Report, filed January 16, 2026 (Doc. 85)("J.Sanchez Objections"), collectively "the Objections." The Court schedules the sentencing for Defendant Obeth Talamante Sanchez for March 5, 2026. The Court schedules the sentencing for Defendant Jose Talamante Sanchez for March 31, 2026. The primary issues are: (i) whether the Court sustains the United States' Objections regarding paragraph 12 of the United States Probation Office's Presentence Investigation Report for Obeth Talamante Sanchez, filed December 16, 2025 (Doc. 76)("O.Sanchez PSR") and paragraph 12 of the United States Probation Office's Presentence Investigation Report for Jose Talamante Sanchez, filed January 12, 2026 (Doc. 82)("J.Sanchez PSR"), because the O.Sanchez PSR and the J.Sanchez PSR do not include the 12.01 kilograms of fake fentanyl in the drug calculation; and (ii) whether the Court should sustain the United States' Objections regarding the O.Sanchez PSR ¶ 23 and the J.Sanchez PSR ¶ 23, because a change in the drug calculation will increase the Base Offense Level from 30 to 36. The Court: (i) sustains

the United States' Objections to the O.Sanchez PSR ¶ 12, at 5, and the J.Sanchez PSR ¶ 12, at 5,

to reflect the scale of the conspiracy to transport around 13 kilograms of fentanyl, despite the fact

that 12.01 kilograms of the drug quantity are fake; (ii) sustains the United States' Objection to the

O.Sanchez PSR ¶ 23, at 8, and the J.Sanchez PSR ¶ 23, at 7, because the Base Offense Level will

rise to 36 when calculated using 13 kilograms of fentanyl.

## FACTUAL BACKGROUND

The United States does not object to the facts in the O.Sanchez PSR or the J.Sanchez PSR

except those in ¶¶ 12 and 23. See J.Sanchez Objections at 1; Response at 4-5. Those undisputed

facts are the Court's finding of fact. See Fed. R. Crim. P. 32(i)(3)(A)("[The court] may accept any

undisputed portion of the presentence report as a finding of fact."). Regarding the O.Sanchez PSR

¶¶ 12 and 23, at 5,8, and the J.Sanchez PSR ¶¶ 12 and 23, at 5, 7, the Court concludes that the

United States shows -- by a preponderance of the evidence -- that the allegations in those

paragraphs are true. The Court therefore makes the allegations in the O.Sanchez PSR ¶¶ 12 and

23, at 5, 8, and the J. Sanchez PSR ¶¶ 12 and 23, at 5, 7, the Court's findings of fact.

On September 9, 2024, New Mexico State Police ("NMSP") Officers and Homeland

Security Investigations ("HSI") conduct a traffic stop on a truck for a violation of New Mexico

traffic law. See O.Sanchez PSR ¶ 11, at 5; J. Sanchez PSR ¶ 11, at 5. The truck is driving eastbound

on Interstate 40 near Grants, New Mexico. See O.Sanchez PSR ¶ 11, at 5; J. Sanchez PSR ¶ 11,

at 5. Officers make contact with the vehicle's driver, who is identified as O. Sanchez. See

O.Sanchez PSR ¶ 11, at 5; J.Sanchez PSR ¶ 11, at 5. The sole passenger of the vehicle is J. Sanchez.

See O.Sanchez PSR ¶ 11, at 5; J.Sanchez PSR ¶ 11, at 5.

After making contact, the officers observe nervous behavior and inconsistent statements

from O.Sanchez and J.Sanchez about their travel plans. See O.Sanchez PSR ¶ 11, at 5; J.Sanchez

PSR ¶ 11, at 5.  Additionally, the officers observe in the vehicle's back seat two suitcases and a flat-billed hat with a Chucky-doll logo on it, which the officers note as being used by narcotic-smugglers as a status symbol.  See O.Sanchez PSR ¶ 11, at 5; J.Sanchez PSR ¶ 11, at 5.  The officers then deploy a narcotic sniffing canine around the car's exterior, but the dog does not alert to the presence of the odors the dog has been trained to detect.  See O.Sanchez PSR ¶ 11, at 5; J.Sanchez PSR ¶ 11, at 5.

The officers receive verbal consent from O.Sanchez and J.Sanchez to search the vehicle.  See O.Sanchez PSR ¶ 11, at 5; J.Sanchez PSR ¶ 11, at 5.  During the search, officers use a portable x-ray machine.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.  The officers locate twenty large packages and one brick-shaped package that are concealed within the two front doors and back driver side passenger door.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5. The twenty cylindrical packages contain fentanyl pills, and the one brick-shaped package contains fentanyl powder.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.  The twenty cylindrical packages containing fentanyl pills weigh approximately 12.01 kilograms.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5. The one brick-shaped package containing fentanyl powder weighs 1.12 kilograms.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.

A small portion of the fentanyl pills are tested and the sample contains acetaminophen and Bis(2, 2, 6, 6-tetramethyl-4-piperidy1)Sebacate, but no fentanyl.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.  The fentanyl powder is also tested and is determined to be fentanyl.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.  The total amount of the fentanyl powder in the brick-shaped package is 1,009.91 grams.  See O.Sanchez PSR ¶ 12, at 5; J.Sanchez PSR ¶ 12, at 5.

O.Sanchez and J.Sanchez are read their Miranda rights, and each waives their right to counsel and right to remain silent. See O.Sanchez PSR ¶ 13, at 5; J.Sanchez PSR ¶ 13, at 5. O.Sanchez and J.Sanchez are interviewed on the same day. See O.Sanchez PSR ¶ 13, at 5; J.Sanchez PSR ¶ 13, at 5. During his interview, O.Sanchez initially denies knowledge of what the officers find in the vehicle, stating that he borrows the vehicle from his brother-in-law. See O.Sanchez PSR ¶ 14, at 6; J.Sanchez PSR ¶ 15, at 6. After being presented with evidence, O.Sanchez admits to picking up drugs and bringing them to Santa Fe, New Mexico. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez reports that this trip is his first time transporting drugs. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. He states that he brings J.Sanchez, because O. Sanchez does not want to transport the drugs alone, and asserts that J.Sanchez is initially unaware of what O.Sanchez is doing regarding the drug transportation. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez denies knowledge of the vehicle drop off location and the person he is supposed to meet when arriving in Santa Fe. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez states that the items which the officers find in the vehicle are "blue pills." See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez identifies his brother-in-law "Antonio" as the person who tells O.Sanchez to pick up the fentanyl. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez states that he is going to receive $5,000.00 for transporting fentanyl and that he will give J.Sanchez $2,500.00 for coming with him. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez states that, with another person's help, the drugs are placed in the car in Phoenix. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez states that J.Sanchez is with him when they put the drugs in the vehicle. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez states that he

- 4 -

advises them to open the vehicle's door to hide the drugs in, which the unknown person then does. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6.

During J. Sanchez' interview, J.Sanchez states that the drugs are pills and affirms that they are fentanyl. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6. J.Sanchez states that they pick up the drugs in Gallup, New Mexico, after they are "ordered" to. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6. J.Sanchez denies knowing how the drugs are ordered, and states that he and O.Sanchez are just transporting them. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6. J.Sanchez states that he assists with placing the fentanyl in the vehicle. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6. J.Sanchez states this trip is the first time that he has picked up drugs. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6. J.Sanchez additionally states that he is unaware of the identities of any of the other people involved. See O.Sanchez PSR ¶ 16, at 6; J.Sanchez PSR ¶ 16, at 6.

J.Sanchez later states that O.Sanchez is the person in contact with the people who want them to transport drugs, and that J. Sanchez is unaware if O.Sanchez has any additional contacts with anyone else who requests them to transport drugs. See O.Sanchez PSR ¶ 16, at 6-7; J.Sanchez PSR ¶ 16, at 6-7. A search of O.Sanchez' telephone reveals that O.Sanchez contacts a suspected fentanyl distributor in Albuquerque 127 times between September 14, 2024, and September 9, 2025. See O.Sanchez PSR ¶ 15, at 6; J.Sanchez PSR ¶ 15, at 6. O.Sanchez also contacts a separate suspected fentanyl distributor in Phoenix 109 times between July 14, 2024, to September 9, 2025. See O.Sanchez PSR ¶ 15, at 6. A case agent states that O.Sanchez and J.Sanchez are couriers of fentanyl during this particular transaction. See O.Sanchez PSR ¶ 13, at 5. Discovery shows that O.Sanchez has contact with fentanyl distributers over approximately 200 times, demonstrating that he has broader knowledge than a mere courier. See O.Sanchez PSR ¶ 13, at 5.

**PROCEDURAL BACKGROUND**

On August 26, 2025, the Grand Jury files a Superseding Indictment in the United States District Court for the District of New Mexico, charging both Defendants as follows:

Count 1: Jose Talamante Sanchez and Obeth Talamante Sanchez with Conspiracy. The offense occurred on September 9, 2024, in Bernalillo County and elsewhere.

Count 2: Jose Talamante Sanchez and Obeth Talamante Sanchez with Possession with Intent to Distribute 400 grams and More of Fentanyl; Aiding and Abetting. The offense occurred on September 9, 2024, in Bernalillo County and elsewhere.

O.Sanchez PSR ¶ 1, at 4; J.Sanchez PSR ¶ 1, at 4.  On October 8, 2025, O.Sanchez pleads guilty to Counts 1 and 2 of the two-count indictment.  See O.Sanchez PSR ¶ 2, at 4.  On October 29, 2025, J.Sanchez pleads guilty to Counts 1 and 2 of the two-count indictment. See J.Sanchez PSR ¶ 2, at 4. Count 1 charges Conspiracy in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(a). See J.Sanchez PSR ¶ 2, at 4; O.Sanchez PSR ¶ 2, at 4.  Count 2 charges  Possession with Intent to Distribute 400 Grams and more of Fentanyl; Aiding and Abetting in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2. See J.Sanchez PSR ¶ 2, at 4; O.Sanchez PSR ¶ 2, at 4.

On December 16, 2025, the United States Probation Office ("USPO") files the O. Sanchez PSR, which applies a total offense level of 21 for Counts 1 and 2.  See O.Sanchez PSR at ¶ 32, at 8.  On January 12, 2026, the USPO files the J. Sanchez PSR, which applies a total offense level of 21 for Counts 1 and 2.  See J.Sanchez PSR at ¶ 32, at 8.

On December 29, 2025, O.Sanchez files the Defendant's Sentencing Memorandum (Doc.78)("Sentencing Memo") which requests that the Court consider a sentence at the low end of the applicable guideline range to no more than thirty-seven months in custody.  See Sentencing Memo at 1.  On January 5, 2025, the United States files its Response.  The United States implicitly

objects to O.Sanchez' drug calculation in O.Sanchez PSR ¶ 12, at 5, because it includes only the brick of real fentanyl, and argues that O.Sanchez is criminally liable under Count 1 for conspiring to transport 12.01 kilograms of fentanyl pills, despite the fact that the pills did not contain any fentanyl. See Response at 5. The United States argues that, even though the pills are fake, this fact does not absolve O.Sanchez of conspiracy to transport 12.01 kilograms of fentanyl. See Response at 5. The United States maintains that under § 2D.1(c), offenses involving at least 12 kilograms but less than 36 kilograms of fentanyl have a Base Offense Level of 36, and that the Court should alter O. Sanchez' base offense level to 36 to reflect the conspiracy to transport more than 12 kilograms of fentanyl. See Response at 6.

On January 16, 2026, the United States files the J. Sanchez Objections, which makes two Objections to the J.Sanchez PSR. See Objections at 1. The United States' first Objection is to J.Sanchez PSR ¶ 12, at 5, which states that, because the packages of pills do not contain any fentanyl, the USPO will not add the fake pills to J.Sanchez' drug calculation for the Offense Level Computation. See J. Sanchez Objections at 2. The United States argues that the USPO should calculate the conspiracy charge with a drug quantity calculation which includes 12.01 kilograms of fake fentanyl, because J.Sanchez agrees to transport around 13 kilograms of actual fentanyl. See J.Sanchez Objections at 7. The United States' second Objection is that the USPO should change J.Sanchez PSR ¶ 23, at 7, to reflect a new Base Level Offense of 36, because the drug calculation should include the 12 kilograms of fake fentanyl. See J.Sanchez Objections at 9. If the USPO changes the drug quantity calculation from 1,009.91 grams of fentanyl to 13 kilograms, Jose will be assigned a Base Offense Level of 36 and not 30 under § 2D1.1. See J.Sanchez Objections at 9.

On January 22, 2026, the USPO files an Addendum to the Presentence Report for J.Sanchez, (Doc. 86)("Addendum"). See Addendum at 1. The Addendum address the United States' J. Sanchez Objections and maintains the position that the drug calculation in the J.Sanchez PSR should include only the 1,000.91 grams of actual fentanyl.  See Addendum at 2.

## ANALYSIS

The Court sustains the United States' two Objections.  First, the Court sustains the United States' Objections to the language in the O.Sanchez PSR ¶ 12, at 5, and the J.Sanchez PSR ¶ 12, at 5, because the drug calculations should include the 12.01 kilograms of fake fentanyl. Second, the Court sustains the United States' second Objection to the language in the O.Sanchez PSR ¶ 23, at 8, and the J.Sanchez PSR ¶ 23, at 7.  This is because under § 2D1.1 the Base Offense Level is 36, rather than 30.

**I.     THE COURT SUSTAINS THE UNITED STATES' OBJECTIONS TO THE O.SANCHEZ PSR ¶ 12, AT 5, AND THE J.SANCHEZ PSR ¶ 12, AT 5.**

Paragraph 12 of the O.Sanchez PSR and the J.Sanchez PSR states in relevant part: "Due to the fentanyl pills not containing any fentanyl, they will not be added to the defendant's drug calculation."  O.Sanchez PSR ¶ 12, at 5; J. Sanchez PSR ¶ 12, at 5.  Both O.Sanchez and J.Sanchez plead guilty to Possession with Intent to Distribute 400 Grams or More of Fentanyl in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)91)(A) and 18 U.S.C. § 2, and to Conspiring to Distribute Fentanyl in violation of 21 U.S.C. § 846.  See O.Sanchez PSR ¶ 2, at 4; J.Sanchez PSR ¶ 2, at 4. The differences in the quantity of a controlled substance involved in a conspiracy is relevant when calculating a defendant's Base Offense Level under § 2D1.1.

The Court agrees with the United States that because O.Sanchez and J.Sanchez agree to transport around thirteen kilograms of what they believe to be fentanyl, the calculation of drugs involved in the conspiracy should reflect this amount, instead of the amount of fentanyl actually

transported.  See O.Sanchez PSR ¶ 15, at 6 ("Obeth eventually admitted to picking up drugs and bringing them to Santa Fe. . . . Obeth stated the items in the vehicle were 'blue pills.'"); J. Sanchez PSR ¶ 16, at 6 ("Jose stated they detained him and Obeth together because they had drugs in their car.  Jose stated that the drugs were "pills" and affirmed the pills were fentanyl when asked by agents."). This is because under § 846, any person who attempts or conspires to commit any offense shall be subject to the same penalties as those prescribed for the offense.  21 U.S.C. § 846.

While a majority of the pills transported actually contained no fentanyl, the Court concludes that the crime of conspiracy rests on the agreement to commit an illegal act, not whether the illegal act was factually possible to execute or even completed. See United States v. Jordan, 467 F. App'x 782, 783–84 (10th Cir. 2012)(explaining that a legal theory that Congress did not intend to punish "fake robbery conspiracies" is meritless because the agreement of conspiracy is the crime, not the act itself)[1]; United States v. Roberts, 14 F.3d 502, 511 (10th Cir.1993)("At the core of a single conspiracy is an agreement to break the law. Criminalized is the agreement itself. That the illegal act does not materialize is another matter....")  A defendant can be convicted of conspiracy to aid in the distribution of drugs even if those drugs are found to be fake. See United

---

[1] United States v. Jordan, 467 F. App'x 782 (10th Cir. 2012) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Jordan has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

States v. Lewis, 641 F.3d 773, 776 (7th Cir. 2011) (explaining that stash house conspiracy defendants were convicted of "conspiring to distribute cocaine that didn't actually exist"); United States v. Corson, 579 F.3d 804, 810 (7th Cir. 2009) (providing that "[t]hough it might seem odd, the fact that the stash house, the drugs—and indeed the whole plot—was fake is irrelevant," as "[t]he crime of conspiracy is the agreement itself").  Impossibility is not a defense to attempting to distribute a controlled substance. See U.S. v. Sobrilski, 127 F.3d 669, 675 (8th Cir. 1997)(holding that impossibility is no defense to a charge under § 846 of attempting to distribute a controlled substance and that a person may be guilty of attempting to distribute such a substance even though, had the attempt succeeded, there would have been no crime.)

The question currently before the Court is whether it follows that because a defendant can be convicted of conspiracy to distribute fake drugs, then a defendant's sentence for a drug conspiracy may be based on a quantity of fake drugs.  The Court holds that it may.  The agreed-upon quantity of controlled substances should be used to determine the offense level because it most accurately reflects the scale of the offense. U.S.S.G. § 2D1.1 comment n.5. ("[t]he types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level –[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance").  The United States Sentencing Guidelines indicate that the quantity of controlled substances used to assess a defendant's Base Offense Level under § 2D1.1 of the Sentencing Guidelines should include both the quantity of actual drugs trafficked by the defendant and the quantity of drugs that the defendant attempts or agrees to traffic: "In the offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the

offense." U.S.S.G. § 2D1.1 comment n.5. Although this statement refers only to buy-sell agreements, and does not mention conspiracy, the Court believes that the reasoning behind this statement applies to all inchoate offenses.

The United States Court of Appeals for the Fifth Circuit reaches this same conclusion in United States v. Burke, relying on the commentary to U.S.S.G. § 2D1.1 to conclude that "for inchoate offenses, the quantity of drugs is based, not on the amount actually delivered, but on the amount agreed upon." 431 F.3d 883, 886-87 (5th Cir. 2005). Accordingly, the Fifth Circuit concludes that a defendant's sentence "for drug conspiracy is properly based upon the amount he agreed to escort. His crime was complete when he agreed to aid in the distribution of 350 kilograms of cocaine with the intent to achieve that objective." United States v. Burke, 431 F.3d at 887. The Court concludes that the drug calculation should reflect the agreed upon amount of drugs, 13 kilograms, not the amount actually transported. The Court, therefore, sustains the United States' Objections to O.Sanchez PSR ¶ 12, at 5 and J.Sanchez PSR ¶ 12, at 5.

## II.     THE COURT SUSTAINS THE UNITED STATES' OBJECTION TO O.SANCHEZ PSR ¶ 23, AT 8, AND J.SANCHEZ PSR ¶ 23, at 7.

Paragraph 23 of the O.Sanchez PSR and the J.Sanchez PSR states in relevant part: "The guideline for a violation of 21 U.S.C. 841(a)(1) is U.S.S.G. § 2D1.1. The Base Offense Level is 30." O.Sanchez PSR ¶ 23, at 8; J.Sanchez PSR ¶ 23, at 7. The United States objects to this assigned level based on its first Objection that O.Sanchez and J.Sanchez are liable for 12.01 kilograms of fake fentanyl, as well as the 1,009.91 grams of real fentanyl. See J. Sanchez Objections at 9; Response at 6. Under Section 2D1.1(C)(5) of the Drug Quantity table, the Base Offense level of conspiracy involving at least 400 grams but less than 1.2 kilograms of fentanyl is 30. See U.S.S.G. § 2D1.1(C)(5). Including the 12.01 kilograms of fake fentanyl into the

defendants' drug calculations, however, raises the Base Offense Level to 36 under Section 2D1.1(C)(2).  See U.S.S.G. § 2D1.1(C)(2).

The Court concludes that the Base Offense Level will be increased by six levels from 30 to 36, because it will include the 12.01 kilograms of fake fentanyl in its calculation. This raises O.Sanchez's Total Offense Level from 21 to 23. With a criminal history category of I, this establishes an imprisonment range for O.Sanchez of 46 to 57 months. This change does not alter J.Sanchez's Total Offense level, however, because under § 2D1.1(a)(5), if the starting Base Offense level is greater than Level 30 and the defendant receives the 4-level reduction in § 3B1.2(a), it will then be decreased to Level 30.  The J.Sanchez PSR concludes that because J.Sanchez is a minimal participant, he receives a 4-level reduction under U.S.S.G. § 3B1.2(a).  See J.Sanchez PSR ¶ 26, at 8.  Accordingly, this 4-level reduction result in his Base Offense Level reverting back to 30 from 36, and does not affect his Total Offense Level, which remains 21.  With a criminal history category of I, this establishes an imprisonment range for J.Sanchez of 37 to 46 months.

**IT IS ORDERED** that: (i) the Objections raised in the United States' Response to Defendant Obeth Talamante Sanchez's Sentencing Memorandum, filed January 5, 2026 (Doc. 79) are sustained; (ii) the United States' Objections to Jose Talamante Sanchez' Presentence Investigative Report, filed January 16, 2026 (Doc. 85)("J.Sanchez Objections") are sustained; (iii) the applicable offense level for J.Sanchez is 21; (iv) the applicable offense level for O.Sanchez is 23; (vi) the applicable criminal history category is I for J.Sanchez; (vii) the applicable criminal history category is I for O.Sanchez; (viii) the United States Sentencing Guidelines establishes an imprisonment range of 37-46 months for J.Sanchez; (ix) the United States Sentencing Guidelines establishes an imprisonment range of 46-57 months for O.Sanchez.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  First Assistant United States Attorney
Rachel Eagle
Timothy S. Vazquez
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

Buck Glanz
Federal Public Defender's Office
Albuquerque, New Mexico

　　　*Attorneys for the Defendant Obeth Talamante Sanchez*

Sarah Gorman
Law Offices of Robert D. Gorman
Albuquerque, New Mexico

　　　*Attorneys for the Defendant Jose Talamante Sanchez*